IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

```
AHTNA GOVERNMENT SERVICES    )
CORPORATION,                 )
                             )
              Plaintiff,     )
                             )
v.                           )
                             )
CAPITOL RESOURCE FUNDING, INC.,)
                             )
              Defendant.     ) Case No.: 3:06-cv-00010-JWS
_____)
```

### OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Capitol Resource Funding, Inc. ("CRF"), moved to dismiss this action for lack of personal jurisdiction. In the alternative, CRF requests this court to stay this matter pending resolution of an action in Virginia that was filed and served later in time than this matter. Plaintiff Ahtna Government Services Corporation ("AGSC") hereby opposes both aspects of CRF's motion and requests that the motion be denied.

### SUMMARY OF ARGUMENT

This controversy arises out of the sale of invoices generated under a Subcontract agreement between Management Assistance and Concepts Corporation ("MACC"), a California based corporation, and AGSC, an Alaska resident corporation. MACC sold CRF more than $6 million worth of invoices over a two year period. AGSC paid these invoices to MACC and CRF from Alaska. Personal jurisdiction over CRF is thus proper under AS

DeLisio Moran
Geraghty & Zobel, P.C.

943 West 6th Avenue
Anchorage, Alaska
99501-2033
‗‗‗‗

(907) 279-9574

99997 - AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 1 of 18

09.05.015(5)(D) because this action relates to "things of value shipped from this state by the plaintiff to the defendant on the order and direction of defendant." Alaska courts have interpreted "things of value" to include money. CRF now claims it is entitled to receive $1.6 million more from AGSC.

In addition, personal jurisdiction over CRF is proper under AS 09.05.015(c) because CRF purposefully established contact with Alaska by entering into a "Purchase and Assignment Agreement" to receive money from an identified Alaska corporation through a contract expressly containing an Alaska choice of law provision. Each of the 44 invoices MACC sold to CRF identified AGSC as an Alaska resident. Thus, CRF knowingly and purposefully established contact with an Alaska resident corporation.

The assertion of personal jurisdiction is clearly reasonable and fair in this case. CRF's 2004 bankruptcy schedules establish that it was a nationwide business, that it was involved in 29 lawsuits in 10 different states and one Canadian province when the bankruptcy was filed, and that it has major creditors in 35 states, including another, unrelated Alaska business which it owes $300,000.

Finally, the alternative relief of a stay should not be granted. The Alaska action was filed first and it was served first. The courts in Virginia, where the later action was

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 – AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 2 of 18

filed, adhere to the first-to-file rule. In this case, that means the Alaska action is allowed to proceed.

In these circumstances, CRF's motion to dismiss and motion to stay should be denied and CRF should be required to answer AGSC's complaint.

## STATEMENT OF FACTS

AGSC disputes a number of CRF's factual assertions it offers in support of its Motion. While reserving the right to dispute CRF's facts in more detail, those that are relevant to the issue of personal jurisdiction are addressed below.

1.  CRF was a nationwide business. It provided financing through the factoring of receivables. CRF would purchase invoices at a discount, with an assignment of rights, and collect the full amount from the account-debtor. CRF's letterhead identified principal offices in Washington, DC, Chicago, Illinois, and Los Angeles, California, as well as Alexandria, Virginia.

2.  CRF's 2004 bankruptcy schedules, filed in Case No. 04-13620-RGM (E.D. VA),[1] list 29 litigation cases pending in state and federal courts located in California, Connecticut, Florida, Indiana, Maryland, Massachusetts, New Brunswick, New York, North Carolina, Pennsylvania, and Virginia.

3.  One of the 29 pending cases, Case No. SJ 04-51972-JRG (N.D.Cal.), was an adversary case commenced by CRF on June 25,

---

[1] CRF's bankruptcy schedules are a matter of public record, completed under penalty of perjury, and are not believed to be in dispute.

DeLisio Moran
Geraghty & Zobel, P.C.

943 West 6th Avenue
Anchorage, Alaska
99501-2033

(907) 279-9574

99997 - AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 3 of 18

2004 against MACC's principals, regarding the very same Subcontract invoices at issue here. Thus, in 2004 CRF voluntarily chose to litigate its claims under the MACC-AGSC assignment invoices in California, not Virginia. CRF served AGSC with a subpoena in that adversary case to which AGSC replied by producing the documents it had regarding MACC and the Subcontract.[2]

4. In addition, CRF's 28 page bankruptcy schedule F identifies approximately 90 utility cooperatives in 35 different states as unsecured creditors that are owed between $100,000 and $5,000,000 each from CRF.

5. One of these creditor utility cooperatives is Arctic Slope Telephone Association Cooperative, 4300 B Street, Suite 501, Anchorage, Alaska, which CRF identifies as an unsecured creditor with a claim of $300,000. This indicates CRF has additional business contact with another Alaska resident corporation.

6. AGSC is an Alaska corporation engaged in the business of government contracting. Its principal office is in Anchorage, Alaska, and it has offices in California. For a period of time beginning in 2004, AGSC was registered to do business in

---

[2] CRF's claim that the delay in serving CRF with the declaratory action prevented it from addressing the claim in the ordinary course of it bankruptcy rings hollow. CRF had the information and knew of the claim, if not specifically of the Alaska action. The related assertion that AGSC attempted to avoid the effect of the automatic stay is illogical. Once the stay was in place, the summons and complaint could not be served; once a plan was confirmed and assets were transferred to J. W. Rayder, the stay was lifted and they were served.

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 - AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 4 of 18

Virginia, but it never had offices, employees or inventory in that state. The contract at issue in this case was terminated in December of 2003.

    7.   AGSC got involved with CRF through MACC, a West Virginia corporation with its principal office in California. MACC borrowed money from CRF beginning in the 1990's and financed its loans primarily with its account receivables and invoices.

    8.   In February of 2001, MACC gave CRF a new Secured Loan Agreement and Note (in the amount of $485,000), a Purchase and Assignment Agreement (pledging future account receivables), a Cross Collateral Agreement and Release (bridging past and future obligations), and a personal guaranty from MACC's principal, Kathleen Robison.[3]

    9.   In September of 2001, AGSC entered into a Subcontract Agreement with MACC to jointly provide services to the Social Services Administration. A copy of the Subcontract Agreement is attached as Exhibit A to the affidavit of counsel submitted herewith. AGSC's Anchorage, Alaska address is identified in the first sentence and in Paragraph 13 of the Subcontract.

    10.   Paragraph 9 of the Subcontract prohibits MACC from assigning its rights without AGSC's written consent. Under Alaska's Uniform Commercial Code, AS 45.29.401(b), this anti-

---

[3] Subsequently, Robison gave CRF a deed of trust on her home in California. CRF obtained insurance for the accounts assigned to it by MACC, specifically including the account at issue in the present matter, and CRF increased MACC's credit limit to $1.5 million.

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 - AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 5 of 18

assignment term is likely unenforceable. Paragraph 14 identifies Alaska law as the governing law. Under AS 45.29.404, the choice of law provision and other contract terms are binding on CRF.

11. At the time the Subcontract was entered, AGSC did not know MACC and Kathleen Robison had an existing debtor-creditor relationship with CRF, or that MACC's rights under the Subcontract were pledged as collateral and assigned to CRF.

12. By letter dated October 2, 2001,[4] AGSC was informed that "we have been fortunate to obtain the services of Capital Resources Funding, Inc. as a source of financing." The letter directed payments to MACC, c/o CRF at a PO Box in Baltimore, Maryland, not Virginia. A copy of this letter is attached as Exhibit B to the affidavit of counsel submitted herewith.[5]

13. AGSC also received letters asking it to certify specific invoices for CRF. An example of these letters, dated November 5, 2001, and the invoice it accompanied are attached as Exhibit C to the affidavit of counsel submitted herewith. The letter directs payment to MACC c/o CRF in Baltimore, Maryland, not Virginia. The invoice identifies AGSC's address in Anchorage, Alaska, twice.

---

[4] CRF claims it sent this and other letters to AGSC, *see* ¶¶ 11 and 15, but AGSC recalls receiving them from MACC. Either the letters came from CRF and are direct additional contacts with Alaska, or CRF was relying on MACC as its agent to deliver them. If the latter is true, they are also additional contacts with the forum. *See*, *Ochoa, et al., v. J.B. Martin and Sons Farms*, 287 F.3d 1182, 1189 (9th Cir. 2001)(the actions of an agent are relative to establishing personal jurisdiction).

[5] This letter did not state "that payment to MACC on the invoice would not discharge AHTNA's debt to CRF," as alleged by CRF in ¶ 11 of its Statement of Facts.

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 – AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 6 of 18

14. From the beginning of the Subcontract in 2001 through 2003, AGSC made its payments on MACC's invoices, as directed by MACC and Robison, either to MACC or to CRF. MACC would in turn forward the payments it received on to CRF. Of the approximately 44 payments AGSC made under the Subcontract, 28 went to MACC, and 16 went to CRF. MACC made at least 18 payments under the Subcontract to CRF. Thus, CRF was clearly aware of the payments directed to MACC, and through its acquiescence in these payments, CRF has waived its right to strict enforcement of the invoices under AS 45.29.406(a).

15. In the winter of 2003, AGSC learned of CRF's allegation that not all payments going to MACC were properly forwarded to CRF. On January 6, 2004, CRF sent a letter informing AGSC of MACC's default and notifying AGSC as follows:

> **CONSEQUENTLY, YOU ARE HEREBY NOTIFIED THAT ALL PAYMENTS ON ANY ACCOUNT OR INVOICE NOW OR HEREAFTER DUE BY YOU TO MACC MUST BE PAID, AND MAILED / WIRED DIRECTLY AND ONLY TO:**
>
> Capitol Resource Funding, Inc.
> P.O. Box 70145
> Baltimore, MD 21279-0145
>
> Or
>
> SunTrust Bank
> Atlanta, GA
> Credit:  Investor Clearing Account, Inc.
> ABA No: 061-000-104
> Account No: 202669289
>
> **Please be advised that any subsequent payment to MACC, or any other party, will not relieve your company of**

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 - AGSC's Opposition to Motion to Dismiss
 *AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 7 of 18

> **liability to CRF, and may result in double liability on the invoice.**

A copy of this letter is attached as Exhibit D to the affidavit of counsel submitted herewith. Thus, payment was directed to Maryland or Georgia, not Virginia.

16. By January 6, 2004, AGSC had already terminated it Subcontract with MACC and had no open accounts or invoices. On March 17, 2004, CRF sent a letter to AHTNA Inc., in Glennallen, AK,[6] and to AGSC, in West Sacramento, CA, demanding payment of $1,605,494.45. AGSC wrote back on April 2, and May 14, 2004, both times in part disputing the allegations and requesting back-up accounting information to determine the application of payments.

17. CRF did not respond to AGSC's last request for information. CRF has not provided a ledger showing the application of payments, nor has it accounted for any payments received from insurance coverage. CRF has not accounted for any payments received from Robison under her guaranty or in the adversary action.[7]

18. On May 17, 2004, AGSC filed its Declaratory Judgment action in the Superior Court in Anchorage Case No. 3AN-04- 07208

---

[6] In November and December of 2003, Comprehensive Financial Services, representing to be CRF's accountants, sent letters to AHTNA, Inc., in Glenn Allen, Alaska. In January of 2004, Comprehensive Financial Services, sent a letter to AHTNA in Anchorage, Alaska. The contacts of the defendant's agents are relevant for establishing personal jurisdiction. *See, supra* note 4.

[7] The adversary action was dismissed with a confidential settlement that AGSC has not seen.

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 - AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 8 of 18

CI for an accounting and to determine its rights and defenses under the assigned Subcontract.

19. On June 25, 2004, CRF filed an adversary Complaint against Robison and Gustat, alleging that Robison and Gustat had, among other things, converted and defrauded CRF out of $1,522,844.80 in receivables CRF was entitled to under the Subcontract. This matter was resolved with a confidential settlement agreement.

20. On August 26, 2004, creditors of CRF commenced an involuntary bankruptcy proceeding and the automatic stay of 11 U.S.C. § 362(a) was in effect.

21. On June 22, 2005, an act terminating the stay under 11 U.S.C. §362(c) occurred when the bankruptcy court conveyed the assets of the CRF estate, including this claim against AGSC, to J. W. Rayder. Once the stay was terminated as to this claim, AGSC was fully within its rights to serve the Alaska complaint for declaratory judgment on Mr. Rayder.

22. On **November 21, 2005**, AGSC served Rayder with the summons and complaint in the declaratory judgment action. On **December 16, 2005**, AGSC received a summons and complaint in the Virginia matter.

23. On December 7, 2005, CRF filed a Suggestion for Bankruptcy, and the Superior Court stayed the proceedings. However, on December 22, 2005, the Superior Court responded to

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 – AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 9 of 18

AGSC's motion to reconsider the stay by giving CRF 20 days to file an opposition.[8]

24. On January 10, 2006, AGSC filed a motion to stay or dismiss the Virginia action because, among other things, the Alaska case was filed first and served first.

25. On January 11, 2006, in lieu of filing an opposition in the Superior Court, CRF removed the action to Federal District Court, and filed its motion to dismiss on January 12. 2006.

## DISCUSSION

CRF's principal argument that general personal jurisdiction under AS 09.05.015(a)(1) is lacking, misses the point. Personal jurisdiction over CRF is authorized by two distinct sub-sections of Alaska's long-arm statute, AS 09.05.015(a)(5)(D) and AS 09.05.015(c). These are both discussed below.

**A.   Jurisdiction Is Authorized by AS 09.05.15(a)(5)(D).**

First, AS 09.05.015(a)(5)(D) provides jurisdiction in an action that "relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the order or direction of the defendant." This sub-section is appropriate in this case because CRF is in the business of lending and collecting money. The phrase "other things of value" in AS 09.05.015(a)(5)(D) has been interpreted

---

[8] The motion to reconsider the stay pointed out that J.W. Rayder is not a bankruptcy trustee and that the transfer of assets to him lifted the stay under 11 U.S.C. § 362(c) (1). It seems illogical that Rayder can sue outside of bankruptcy, but asserts that it can't be sued because of bankruptcy.

DELISIO MORAN GERAGHTY & ZOBEL, P.C.
943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033
(907) 279-9574

99997 - AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 10 of 18

to "allow jurisdiction over an out-of-state party receiving funds from an Alaska resident." *Cramer v. Wade*, 985 P.2d 467, 470 (Alaska 1999)(citing *Kennecorp Mortgage v. First National Bank*, 685 P.2d 1232, 1238 (Alaska 1984). This is exactly what CRF has been doing and seeks to continue doing in this case - it has been receiving funds from an Alaska resident. AGSC's action seeks a determination of CRF's rights to continue receiving money from Alaska.

In *Cramer*, personal jurisdiction supporting entry of default judgment in an Alaska state court against an out-of-state defendant was upheld based on a loan in the amount of $135,000 sent from an Alaska resident to a California resident. The defendant in that case had not visited Alaska, but had called Alaska from California. In the present case, CRF alleges that it has received $4,450,642.67 from AGSC, which it acknowledges as an Alaska corporation, and that it is seeking to receive an additional $1,611,484.00 from the same Alaska resident corporation. Thus, this case plainly qualifies as an action for assertion of personal jurisdiction under AS 09.05.015(a)(5)(D).

**B.   CRF Purposefully Availed Itself to the Laws of Alaska.**

Second, AS 09.05.015(c) authorizes personal jurisdiction based on "any other grounds provided by the common law." Alaska courts have found personal jurisdiction in this section where an out-of-state defendant purposefully directed its activities at

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 - AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 11 of 18

the forum state. *Polar Supply v. Steelmaster Industries*, Supreme Court No. S-11664, No. 5970 (December 23, 2005); 2005 Alas. LEXIS 179 (Alaska 2005). The *Polar Supply* court held that the purposeful availment requirement is met when the defendant "'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Polar Supply, supra*, 2005 Alas. LEXIS at 15. This section applies to CRF because it knowingly and purposefully loaned money to MACC based on a contract and invoices to be paid by an Alaska resident corporation.

In *Polar Supply*, the court found jurisdiction over a Canadian company in a breach of contract action where the company advertised throughout America and sold one product to an Alaska company, knowing the product would likely be used in Alaska. In the instant case, CRF was a national company that took an assignment of contract with an Alaska corporation, where the contract designated Alaska law, and then loaned money on a series of individual invoices each bearing AGSC's Alaska address on the face in two locations.

In these facts, jurisdiction is authorized under AS 09.05.015(c) because CRF purposefully entered into a contract to purchase invoices to be paid by an Alaska corporation. CRF is careful to argue that it had no contract with AGSC. Bearing in mind that AGSC was not registered to do business in Virginia throughout the entire time CRF was purchasing invoices, CRF must

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 – AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 12 of 18

nonetheless have assumed it was possible a dispute over the collection of the invoices would take place in Alaska.

### C. CRF Fails to Properly Acknowledge Its Alaska Contacts.

#### 1. A transaction to receive $6,000,000 from Alaska is a significant contact with Alaska.

The court in *Polar Supply* noted that it is the quality rather than the quantity of contacts that is significant for personal jurisdiction. That court held that the purposeful availment requirement is met where the defendant "'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Polar Supply, supra*, 2005 Alas. LEXIS at 15. Here, CRF loaned MACC a significant amount of money[9] based on the Subcontract which expressly identified AGSC as an Alaska corporation with an Alaska address, and which expressly adopted Alaska law. In these circumstances, where CRF agreed to transactions that would ultimately exceed $6,000,000, the quality affirmative conduct is sufficient to authorize personal jurisdiction in Alaska.

#### 2. CRF cannot avoid the nature of the contacts.

CRF argues that it never took assignment of the MACC Subcontract with AGSC, but instead only took assignments of invoices. That argument is based upon a distinction without a meaning. Under AS 45.29.404, the collection rights acquired by CRF are expressly subject to the terms of the Subcontract, with the possible exception of the anti-assignment provision, and

---

[9] CRF gave MACC a credit limit of $1,500,000 and claims it paid out over $6,000,000.

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 – AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 13 of 18

subject to the defenses AGSC may have against MACC. Thus, CRF's right to collect from AGSC is directly tied to and based on the Subcontract and Alaska law. AGSC's action is directly tied to CRF's attempt to assert those rights against an Alaska resident.

In any event, CRF does not deny that the contract giving rise to its right to receive money from AGSC is a contract with an Alaska corporation that designates application of Alaska law. CRF also does not deny knowing it was bargaining to collect and receive money from Alaska.

### 3. CRF's Alaska contacts were repeatedly reaffirmed.

The contacts with Alaska were repeated a number of times. Each time CRF agreed to lend on another MACC invoice, it was presented with AGSC's Alaska address, twice, on the top of each invoice. Approximately 44 of these invoices were sold to CRF by MACC during a two year period. Each time CRF agreed to purchase an invoice, it was reminded that the obligor on the invoice, the account-debtor, was an Alaska corporation with an Alaska address. Each time CRF agreed to purchase an invoice, it consciously decided to do business with an Alaska resident. CRF does not allege it failed to review the invoices before purchasing them.

### 4. CRF did business with another Alaska company.

CRF claims that "[o]utside of its brief contacts with AHTNA, CRF has never availed itself to any other activities with any other entity within the state of Alaska." Opposition at 14. CRF's bankruptcy schedules indicate that this may not be the

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033
_____

(907) 279-9574

99997 – AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 14 of 18

case. Sheet no. 1 of the 28 sheets listing unsecured creditors identifies Arctic Slope Telephone Association Coop of Anchorage, Alaska, as an unsecured creditor with a claim in the amount of $300,000.

**D.   Personal Jurisdiction Over CFR Is Fair and Reasonable.**

These facts demonstrate that CRF has purposefully established minimum contacts with Alaska and continued them for approximately 2 years. The assertion of personal jurisdiction here is proper unless CRF can present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Polar Supply*, *supra*, at 16. CRF can not present a case sufficient to defeat jurisdiction in the face of these facts.

CRF was a national company. It had offices in major American cities on both coasts. It had lawsuits pending in 10 different states and one Canadian province when bankruptcy was commenced. CRF sued MACC's principals in California regarding the same invoices. CRF had large, unsecured creditors in 35 different states, including Alaska. CRF would not be more inconvenienced by a suit in Alaska than by a suit in one of these other states. *Polar Supply*, *supra*, at 17. It also seems reasonable that CRF anticipated the possibility of a lawsuit in Alaska after undertaking assignment of contract rights involving $6,000,000 in factored, Alaskan invoices.

CRF claims that all of the documents relating to AGSC's claim for declaratory judgment are in Virginia. This is

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033
_____

(907) 279-9574

99997 – AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 15 of 18

something that may occur in any lawsuit, and it is not a sufficient basis to reject personal jurisdiction. *Polar Supply*, *supra*, at 18 ("inconvenience to at least some parties will probably be associated with litigation in either this jurisdiction or the [foreign] forum"). There is no reason to reject personal jurisdiction on the basis of fairness or reasonableness in this case.

### E.  Virginia Follows the First-to-File Rule.

CRF argues in the alternative that the Alaska matter should be stayed pending resolution of the CRF's action in Virginia. This argument ignores the fact that the Alaska action was both filed first and served first, and the law of the first-to-file rule followed by the courts in Virginia. *Doe v. Connors*, 796 F.Supp. 214, 223 (W.D.Va. 1992). The rule as applied in the Fourth Circuit is if a court must decide which of two parallel cases must go forward, generally the first case filed must be chosen. *SAS Institute, Inc., v. Practicingsmarter, Inc.*, 353 F.Supp.2d 614, 617 (M.D.N.C. 2005). Virginia also recognizes that when applying the first-to-file rule to an action removed from state court, the state court filing date is used. *Affinity Memory v. K & Q Enterprises*, 20 F.Supp.2d 948, 954 (E.D. Va. 1998). In the circumstances presented here, AGSC has asked the court in Virginia to apply this rule and stay or dismiss the Virginia action.

### CONCLUSION

Plaintiff AGSC is an Alaska resident corporation and it filed this action in Alaska. It did not voluntarily elect to do

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 - AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 16 of 18

business with CRF. However, as described above, CRF purposefully established a relationship with AGSC by electing to purchase invoices owed by an Alaska corporation, under a contract governed by Alaska law, by receiving and directing payments from an Alaska corporation totaling millions of dollars, and by knowingly repeating these contacts over a two year period. In these circumstances, personal jurisdiction is authorized under AS 09.05.015(a)(5)(D) and AS 09.05.015(c). The Motion to Dismiss should be denied.

AGSC filed its lawsuit first and served its lawsuit first. Virginia, the jurisdiction where the second action was filed, adheres to the first-to-file rule. Should the Alaska court deny the motion to dismiss, there is also no need to stay the pending action.

For all these reasons, this court should deny CRF's motion to dismiss and the alternative motion to stay.

DATED this 27th day of January, 2006, at Anchorage, Alaska.

DeLisio Moran Geraghty & Zobel, P.C.
Attorneys for Plaintiff

By: /s/ Bruce A. Moore
Bruce A. Moore
Bar No. 8611124
DeLisio Moran Geraghty & Zobel P.C.
943 W. 6th Avenue
Anchorage, AK 99501
Phone: (907) 279-9574
Fax: (907) 276-4231
E-mail: bmoore@dmgz.com

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

99997 - AGSC's Opposition to Motion to Dismiss
*AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 17 of 18

This is to certify that a true copy of
the foregoing was served via electronic
service or U.S. Mail this 27th day of
January, 2006, to the following:

Herbert A. Viergutz, Esq.
Barokas Martin & Tomlinson
1029 W. 3rd, Ste. 280
Anchorage, AK 99501

    /s/ Juliana Wood
By _____
    Juliana Wood

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033
____

(907) 279-9574

99997 - AGSC's Opposition to Motion to Dismiss
 *AGSC v. Capitol Resource Funding*; Case No.: 3:06-cv-00010; Page 18 of 18