**EXHIBIT A - PART 1 OF 3 (pages 1-10)**
**AGSC MOTION FOR RECONSIDERATION**
**CASE NO. 3:06-CV-00010 JWS**

Case 3:06-cv-00010-JWS   Document 21-2   Filed 05/19/2006   Page 1 of 11



# Capitol Resource Funding, Inc.
FINANCIAL SERVICES

24853 Del Prado
Dana Point, California 92629
949 248-5140  800 992-5241  Fax: 949 248-7995

510 King Street
Suite 501
Alexandria, Virginia 22314
703 683-5220  888 CRF-2424  Fax: 703 683-7029
www.crf.com

April 10, 2001

Ms. Kathleen Robison
President
Management Assistance and Concepts Corporation
203-A Calle del Oaks
Monterey, CA 93940

Dear Ms. Robison:

Enclosed is the hard copy of the Promissory Note for your signature. Please have it notarized and sent back to us by Monday of next week. Thank you and please call us if you have any questions.

Very truly yours,

Ramon V. Jugo
Senior Commercial Credit Administrator

*[handwritten note: Ramon and John and David, Thanks for all your workin' me long this hoppen!!  Kathleen R]*

EXHIBIT A
PAGE 1 OF 31

# CAPITOL RESOURCE FUNDING, INC.
510 King Street
Suite 501
Alexandria, Virginia 22314

## VIRGINIA SECURED LOAN AGREEMENT AND NOTE

This Virginia Secured Loan Agreement and Note (the "Agreement") is effective as of this 10th day of April, 2001, by and among Capitol Resource Funding, Inc., a Virginia corporation, with its principal place of business located at 510 King Street, Suite 501, Alexandria, VA ("CRF" or "Secured Party"), and Management Assistance and Concepts Corporation, a West Virginia corporation, having its principal place of business at 203-A Calle Del Oaks, Monterey County, California ("MACC" or "Debtor").

WHEREAS, CRF and MACC, entered into a Purchase And Assignment Agreement, dated the 21st day of February, 2001, as may be amended from time to time, (the "MACC Agreement"), pursuant to which MACC sold to CRF all of MACC's rights, title and interest in and to certain accounts receivable; and

WHEREAS, MACC has requested CRF to provide MACC a contract financing facility not to exceed Four Hundred Eighty-Five Thousand Dollars ($485,000) under certain terms and conditions set forth therein (the "Financing Facility"); and

WHEREAS, MACC hereby reaffirms and ratifies the MACC Agreement, as they may have been amended from time to time, and agree that such agreements are hereby amended to include the terms and conditions of this Agreement; and

WHEREAS, MACC hereby reaffirms their respective grants of security interests, including, but not limited to, all of their present and future accounts receivable (whether accounts or general intangibles), contract rights, and the proceeds arising therefrom, pursuant to the terms of the Purchase Agreement; and

WHEREAS MACC has entered into certain contracts for which MACC anticipates revenue, for which it will require use of the contract financing credit facility set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and promises in this Agreement, and other good and valuable consideration, the sufficiency and receipt of such consideration hereby being acknowledged,

EXHIBIT A
PAGE 2 OF 31

intending to be legally bound, CRF, and MACC agree as follows:

SECTION ONE: Agreement For Loan: Terms

    1.1.   Secured Party shall make available to Debtor a contract financing credit facility in the amount of Four Hundred Eighty-Five Thousand Dollars ($485,000), (the "Financing Facility"). Any and all loans taken against the Financing Facility shall be subject to the terms and conditions of this Agreement.

    1.2.   Any and all loans taken against the Financing Facility shall be related to specific customer directives or purchase orders or customer requests (hereinafter referred to as PO) issued to Debtor, copies of which must be provided to Secured Party as a precondition to any loans on the Financing Facility, and such loan shall be accounted for under the specific PO. Secured Party shall review each loan against the specific PO presented by Debtor and may, at its sole and absolute discretion, refuse to lend against any or all specific PO presented by Debtor.

    1.3.   Debtor shall repay Secured Party the entire Financing Facility (principal and interest) associated with the specific PO from its accounts receivable financing provided by Secured Party in accordance with the MACC Agreement for accounts receivable generated from the specific PO. Debtor represents and pledges that each specific PO shall generate accounts receivable sufficient to repay any indebtedness associated with the specific PO by a date certain, which date shall be agreed to in advance by the parties.

    1.4.   Debtor hereby authorizes CRF, at its sole and reasonable discretion, to repay any loans against the Financing Facility from proceeds otherwise due Debtor under this Agreement, the MACC Agreement, or from proceeds without further notice or consent.

    1.5.   In the event that Debtor does not generate accounts receivable sufficient to repay any indebtedness associated with a specific PO by the agreed upon date certain, Debtor shall pay to CRF monies sufficient to repay the outstanding indebtedness.

    1.6.   For any loans taken against the Financing Facility, Debtor shall pay a fee to Secured Party on the unpaid principal balance of the loan at a rate of one percent (1%) for the first ten (10) days and one percent (1%) for each additional ten (10) day period or a fraction thereof. In addition, there will be a surcharge of one and a quarter percent (1.25%) every thirty (30) days.

    1.7.   This Agreement shall not alter or amend the terms and conditions for CRF's purchase of accounts receivable as set forth in the MACC Agreement,



even for the purchase of accounts receivable generated on specific PO for which CRF extends Debtor financing under this Agreement.

1.8. The indebtedness may be prepaid at any time in whole or in part without premium or penalty. Any partial payment made hereunder, including payments reducing the outstanding indebtedness of the Financing Facility, shall be applied first to the interest, then to the fee, and then against the principal balance.

**SECTION TWO: Security**

As security for the indebtedness of Debtor to Secured Party hereunder, Debtor has executed and delivered to Secured Party, and supported by appropriate corporate resolution, necessary Security Agreements and financing statements, all executed in accordance with UCC Article 9. Debtor further agrees to execute any and all such additional security agreements, financing statements as may be required or requested by Secured Party to perfect all security interests to be conferred on Secured Party under this Agreement to accord Secured Party a perfected first priority security position under UCC Article 9, and any other documents or certificates as may be reasonably requested by Secured Party.

**SECTION THREE: Representations and Warranties of Debtor**

3.1. In addition to the warranties contained in the MACC Agreement, and reaffirmed and ratified herein, Debtor represents and warrants as follows, such representations and warranties to be deemed continuing representations and warranties during the entire term of this agreement:

(a) This agreement, the security agreements and other documents and instruments required hereunder, when issued and delivered, will all be valid and binding in accordance with their terms. Debtor is a corporation duly organized and existing and in good standing under the laws of West Virginia. Execution, delivery and performance of this Agreement, the security agreements and other documents and instruments referenced and required hereunder, are within its corporate powers, have been duly authorized, and are not in contravention of law, the terms of the articles of incorporation, or bylaws of Debtor, and do not require the consent or approval of any governmental body, agency, or authority.

(b) The execution, delivery and performance of this Agreement, the security agreements and other documents and instruments required hereunder are not in contravention of the unwaived terms of any indenture,

EXHIBIT A
PAGE 5 OF 31

agreement or undertaking to which Debtor is a Party or by which Debtor is bound.

(c) No litigation or other proceeding before any court or administrative agency is pending, or to the knowledge of Debtor, or the officers of Debtor, is threatened against Debtor, the outcome of which could materially impair the financial condition of Debtor or the ability of Debtor to carry on business.

**SECTION FOUR: Affirmative Covenants of Debtor**

Debtor covenants and agrees that Debtor will so long as any indebtedness remains outstanding under this facility, it shall

4.1. Furnish Secured Party with the following:

(a) Such information as is required by the terms and conditions of this Agreement and all other agreements or other documents or instruments of security referred to in this agreement.

(b) Promptly, and in a form satisfactory to Secured Party, such other information as Secured Party may reasonably request from time to time.

4.2. Pay and discharge all taxes and other governmental charges, and all contractual obligations requiring the payment of money, before such become overdue, unless and to the extent only that such payment is being contested in good faith.

4.3. Maintain insurance coverage on the physical assets and inventory of Debtor and against other business risks in such amounts and of such types as are customarily carried by companies similar in size and nature to that of Debtor, and in the event of acquisition of additional property, real or personal, or of incurring additional risks of any nature, increase such insurance coverage in such manner and to such extent as prudent business judgment and present practice dictate. In the case of all policies of insurance covering property mortgaged or pledged to Secured Party or property in which Secured Party shall have a security interest of any kind whatsoever, other than those policies of insurance protecting against casualty liabilities to strangers, all such policies of insurance shall provide that the loss payable thereunder shall be payable to Secured Party and Debtor as their respective interests may appear. All such policies of insurance or copies thereof, including all indorsements thereon and those required hereunder, shall be deposited with Secured Party.

4.4. Permit Secured Party through its authorized attorneys, accountants

and representatives, to examine the books, accounts, records, ledgers and assets of every kind and description of Debtor at all reasonable times on oral or written request of Secured Party.

4.5. Promptly notify Secured Party of any condition or event that constitutes, or with the running of time or the giving of notice will constitute, a default under this agreement, and promptly inform Secured Party of any material adverse changes in the financial condition of Debtor.

4.6. Maintain in good standing all licenses required by the State of West Virginia, any other state in which Debtor maintains business licenses, or any agency thereof, or other governmental authority that may be necessary or required for Debtor to carry on its general business objects and purposes.

4.7. At any time on the request of Secured Party to execute and deliver to Secured Party, in form satisfactory to Secured Party, such reasonable additional documentation in respect of the indebtedness and liability of Debtor to Secured Party contemplated under the terms of this Agreement as Secured Party shall deem necessary or desirable to comply with the provisions or requirements of UCC Article 9, including, without limiting the generality of the foregoing, appropriate security agreements and financing statements.

**SECTION FIVE: Negative Covenants of Debtor**

Debtor covenants and agrees that so long as any indebtedness remains outstanding under this Agreement that Debtor will not, without the prior written consent of Secured Party:

5.1. Make any material change in the general business objects or purpose of Debtor or in its corporate structure or purchase, acquire, or redeem any of its capital stock.

5.2. Sell, lease, transfer or dispose of all, substantially all, or any material part of the assets of Debtor, or enter into any merger or consolidation agreement.

5.3. Guarantee, indorse or otherwise become secondarily liable for or on the obligations of others, except by indorsement for deposit in the ordinary course of business.

5.4. Become or remain obligated for any indebtedness for money loaned, or for any indebtedness incurred in connection with the acquisition of any property, real or personal, tangible or intangible, except:

(a) Indebtedness to Secured Party.

(b) Current trade, utility or non-extraordinary accounts payable arising in the ordinary course of the business of Debtor.

5.5. Sell or assign any account, note or trade acceptance receivable except to Secured Party.

**SECTION SIX: Default**

6.1. On nonpayment, when due in accordance with the terms thereof, and continuance of such nonpayment for a period of ten (10) days, the unpaid balance, including all interest and fees, shall automatically become immediately due and payable.

6.2. On occurrence of any of the following events of default, or at any time thereafter unless such default is remedied, Secured Party may give notice to Debtor declaring all outstanding indebtedness hereunder to be due and payable, whereupon all indebtedness then outstanding hereunder shall immediately become due and payable:

(a) Default in observing or performing any of the covenants or agreements of Debtor set forth in SECTIONS FOUR and FIVE.

(b) Default in the observing or performing any of the other covenants or agreements of Debtor in this agreement set forth, and continuance thereof for ten (10) days after notice to Debtor of such default by Secured Party.

(c) Falsity of any representation or warranty made by Debtor in this agreement, or in any instrument submitted pursuant to this agreement, in any material respect.

(d) Default in observing or performing any of the covenants or agreements of Debtor set forth in any collateral document of security given to secure indebtedness hereunder, and the continuation of such default beyond any period of grace specified in any such document.

(e) Default in the payment of any other obligation of Debtor for money loaned, or in observing or performing any covenants or agreements given with respect thereto.

(f) Any change, for any reason whatsoever, in the management, ownership or control of Debtor that shall in the sole judgment of Secured Party adversely affect future prospects for the successful operation of Debtor.

(g) If a committee of creditors is appointed for the business of Debtor; Debtor makes a general assignment for the benefit of creditors, is adjudicated bankrupt, or files a voluntary petition in bankruptcy or for reorganization or to effect a plan or arrangement with creditors; Debtor

files an answer to a petition by creditors or other petition filed against Debtor, admitting the material allegations thereof for an adjudication in bankruptcy or for a reorganization; Debtor applies for or permits the appointment of a receiver or trustee or custodian for any of the property or assets of Debtor; such receiver, trustee or custodian is appointed for any of the property or assets of Debtor, otherwise than on application or consent of Debtor, and such receiver, trustee or custodian so appointed is not discharged within ten (10) days after the date of appointment; or an order is entered, and is not dismissed or stayed within ten (10) days from entry, approving any petition for reorganization of Debtor.

### SECTION SEVEN: Remedies

On any default hereunder, and at any time thereafter, the unpaid balance, including all interest and fees, shall automatically become immediately due and payable and Secured Party shall have the rights and remedies of a Secured Party under Code of Virginia, §§ 8.9-101 *et seq.*, and any other rights and remedies available at law or in equity in addition to the rights and remedies provided in this Agreement or in any other instrument or paper executed by Debtor.

### SECTION EIGHT: Waiver; Rights of Secured Party Cumulative

No delay or failure of Secured Party in exercising any right, power or privilege hereunder shall affect such right, power or privilege, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other power, right or privilege. The rights of Secured Party under this agreement are cumulative and not exclusive of any right or remedy that Secured Party would otherwise have.

### SECTION NINE: Notice

All notices to Secured Party with respect to this agreement shall be deemed to be completed on transmission by any of the following methods: United States mail first class postage prepaid; certified mail; facsimile; or, overnight delivery by national delivery company, to offices of Debtor at:

Management Assistance and Concepts Corporation
203-A Calle Del Oaks,
Monterey, California 93940
Facsimile: 831 3732657

EXHIBIT A
PAGE 9 OF 31

SECTION TEN: Effect of Agreement

This agreement shall become effective on the execution hereof by Secured Party and Debtor and shall be binding on and shall inure to the benefit of Secured Party and Debtor and their respective successors and assigns.

SECTION ELEVEN:   Administration of Agreement

DEBTOR HEREBY RECOGNIZES AND AGREES THAT SECURED PARTY SHALL ADMINISTER FROM ITS PRINCIPAL OFFICES LOCATED IN THE COMMONWEALTH OF VIRGINIA ALL MATTERS RELATING TO THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO: THE PREPARATION, DELIVERY, FINAL APPROVAL, ACCEPTANCE AND FINAL EXECUTION OF THIS AGREEMENT; FUNDING OF THE INITIAL FACILITY AND FINANCING FACILITY; AND THE ACCOUNTING OF ALL COLLECTIONS AND PAYMENTS RECEIVED UNDER THIS AGREEMENT. DEBTOR FURTHER STIPULATES AND AGREES THAT SUCH ADMINISTRATION CONSTITUTES SUFFICIENT CONTACTS WITH THE COMMONWEALTH OF VIRGINIA TO SUPPORT THE FOLLOWING SECTIONS REGARDING CHOICE OF LAW AND CHOICE OF JURISDICTION AND VENUE.

SECTION TWELVE:   Choice of Law

THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE COMMONWEALTH OF VIRGINIA, HOWEVER, WITHOUT REGARD TO THE CONFLICTS OF LAW RULES THEREOF.

SECTION THIRTEEN: Choice of Jurisdiction and Venue

WITHOUT PREJUDICE TO THE RIGHT OF SECURED PARTY TO BRING SUIT IN ANY COURT OF COMPETENT JURISDICTION TO ENFORCE THIS AGREEMENT OR ANY OTHER RIGHT SECURED PARTY MAY HAVE, THE DEBTOR HEREBY IRREVOCABLY WAIVES ANY PRESENT OR FUTURE OBJECTION TO THE JURISDICTION OF THE COURTS OF THE COMMONWEALTH OF VIRGINIA OR THE UNITED STATES DISTRICT COURTS LOCATED IN VIRGINIA OVER DEBTOR FOR THE PURPOSE OF ENFORCING THIS AGREEMENT OR ANY OTHER RIGHT SECURED PARTY MAY HAVE WITH RESPECT TO DEBTOR OR ANY DISPUTE BETWEEN THE PARTIES, AND DEBTOR SPECIFICALLY AGREES TO THE JURISDICTION AND VENUE OF THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA, VIRGINIA, AND THE UNITED STATES DISTRICT COURT FOR THE

EXHIBIT A
PAGE 10 OF 31