**EXHIBIT A – PART 2 OF 3 (pages 11-20)
AGSC MOTION FOR RECONSIDERATION
CASE NO. 3:06-CV-00010 JWS**

EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION, FOR SUCH PURPOSE.  IN THE EVENT AN ACTION IS INSTITUTED IN A COURT OTHER THAN THESE COURTS LOCATED IN VIRGINIA ADDRESSING DISPUTES BETWEEN THE PARTIES TO THIS AGREEMENT, DEBTOR AGREES TO THE REMOVAL OF SUCH ACTION TO THESE COURTS LOCATED IN VIRGINIA UPON THE REQUEST OF SECURED PARTY.

In Witness Whereof, DEBTOR has executed this Agreement on the ____ day of _12 APRIL_, 200_1_, and the SECURED PARTY has noted its acceptance by its authorized representative.

Management Assistance and Concepts Corporation:

BY _____  _KATHLEEN C. ROBISON, President_

Authorized Signature, Title

### Certificate of Notary Public

In the State of _California_,
County of _Monterey_, to wit;
    This the _12th_ day of _April_, 20_01_,
_Kathleen C. Robison_, who is known to me, or was proven to be by sufficient proof, appeared before me, the undersigned, a Notary Public of the aforesaid jurisdiction, and, after being sworn according to law, executed the above document before me and stated that (s)he was authorized to execute this document for the purposes contained therein.
In witness thereof, I hereunder set my hand.

_Michael J Mendenhall_                     Notary Public

MICHAEL J. MENDENHALL
Comm. # 1256825
NOTARY PUBLIC-CALIFORNIA
Monterey County
My Comm. Expires April 12, 2004

My commission expires: _April 12, 2004_
Accepted: _APRIL 12_                20_01_          SEAL

Management Assistance and Concepts Corporation:

BY _____ *KATHLEEN CROSSON, President*
Authorized Signature, Title

## Certificate of Notary Public

In the State of _____,
County of _____, to wit;
        This the _____ day of _____, 20__,
_____, who is known to me, or was proven to be
by sufficient proof, appeared before me, the undersigned, a Notary Public of the
aforesaid jurisdiction, and, after being sworn according to law, executed the
above document before me and stated that (s)he was authorized to execute this
document for the purposes contained therein.
In witness thereof, I hereunder set my hand.


_____
                                            Notary Public

My commission expires:                                  SEAL
Accepted:_____ 20 __


Capitol Resource Funding, Inc.


_____
David D. Marrin, Executive Vice President
510 King Street, Suite 501
Alexandria, Virginia   22314

# CAPITOL RESOURCE FUNDING, INC.

510 King Street
Suite 501
Alexandria, Virginia 22314

## VIRGINIA PURCHASE AND ASSIGNMENT AGREEMENT

Agreement made between Management Assistance & Concepts Corporation, a West Virginia corporation, having its principal place of business at 203-A Calle Del Oaks, Monterrey County, State of California, hereinafter referred to as Seller, and Capitol Resource Funding, Inc., a Virginia corporation, with its principal place of business located at 510 King Street, Suite 501, Alexandria, VA, hereinafter referred to as Purchaser.

1. **Purchase of Accounts.** Seller for and in consideration of the sums set forth in the annexed Schedule A (such Schedule A as the same may be supplemented or added to from time to time being hereinafter called "Schedule A"), and other good and valuable consideration, receipt of which is acknowledged, does hereby sell, assign and transfer to the Purchaser, its successors and assigns, all of Seller's right, title and interest in and to Seller's accounts receivable set forth in Schedule A, which is made part of hereof, and all monies due or which may become due upon such accounts receivable ("Accounts").  Seller authorizes Purchaser to insert and/or supplement Schedule A whenever accounts are subsequently purchased.  Seller recognizes and agrees that nothing contained in this Agreement obligates Purchaser to purchase additional or future accounts from Seller.

2. **Power of Attorney.**  Seller does hereby appoints the Purchaser, its successors and assigns, its true and lawful attorney, for Seller, and in Seller's name and stead, but for Purchaser's benefit, (a) to sell, assign, transfer, set over, pledge, compromise, or discharge the whole, or any part, of such Accounts; (b) to do all acts and things necessary, or proper, in furtherance of any such purposes; (c) to ask, collect, receive and sue, in its own name or otherwise, for the monies due, or which may become due, upon such Accounts; (d) perform such other acts as may be allowed by other agreements between the parties; and (e) to substitute one person, or more, with like powers, hereby ratifying and confirming all that the Purchaser, or its substitute, or substitutes, shall lawfully do by virtue of this sale, assignment and transfer.  This power of attorney is coupled with an interest and is irrevocable until released in writing by Purchaser.

3. **Representations, Warranties, & Covenants.**  To induce Purchaser to render its services available to Seller and with full knowledge that the truth and accuracy of the following are being relied upon by the Purchaser in the purchase and remittance for the Accounts acceptable to Purchase, the Seller represents, warrants, covenants and agrees that:

Seller Initials _KN_                                  1                     Purchaser Initials _____



(a)  The Seller is the sole and absolute owner of each Account set forth in Schedule A and has full legal right to make said sale, assignment and transfer thereof;

(b)  The correct amount of each Account is set forth in Schedule A and is not in dispute;

(c)  The payment of each Account is not contingent upon the fulfillment of any obligation or contract, past or future, and any all obligations required of the Seller have been fulfilled as of the date of this Agreement;

(d)  Each Account set forth in Schedule A is based on an actual sale and delivery of goods and/or services actually rendered, is presently due and owing to Seller, is not past due or in default, has not been previously sold, assigned, transferred, or pledged, and is free of any encumbrance or lien;

(e)  There are no defenses, offsets, or counterclaims against any of the Accounts, and no agreement has been made under which the account debtor may claim any deduction or discount, except as otherwise stated in any of the Accounts set forth in Schedule A;

(f)  Each Account set forth in Schedule A shall be the property of the Purchaser and shall be collected by Purchaser, but if for any reason it should be paid to Seller, Seller shall promptly notify Purchaser of such payment, shall hold any checks, drafts, or monies so received in trust for the benefit of Purchaser, and shall promptly endorse, transfer and deliver the same to the Purchaser. In the event that Seller receives any payments from an Account Debtor and does not immediately transmit such funds to Purchaser, in addition to the obligation to deliver such funds immediately to Purchaser, each time such event occurs Seller shall pay to Purchaser a penalty of ten percent (10%) of the amount received but not immediately paid to Purchaser, and Purchaser may offset this penalty against any amounts which might otherwise be due to Seller;

(g)  Purchaser shall have the right of endorsement and also the right to require endorsement by Seller on all payments received in connection with each Account set forth in Schedule A;

(h)  To Seller's best knowledge, each account debtor set forth in Schedule A is not insolvent as that term is defined by the Federal Bankruptcy Act and the Uniform Commercial Code;

(i)  Each account debtor named in Schedule A will not object to the payment for, or the quality or the quantity of the subject matter of the Account and is liable for the amount referred to above in Paragraph 3(b);

EXHIBIT ___A___
PAGE _14_ OF _31_

Seller Initials _LW_

2

Purchaser Initials _____

(j)  Each account debtor set forth in Schedule A shall be promptly notified after acceptance by Purchaser that the Account has been transferred to and is payable to Purchaser;

(k)  All Accounts forwarded to Purchaser and acceptable to Purchaser after date hereof, and thereby forming part of Schedule A, shall comply with each and every one of the representations, warranties, covenants and agreements contained in this Agreement

4.  **Adjustments.**   In the event of a breach of any of the representations, warranties, covenants, and agreements contained in this Agreement, including a dispute between the Seller and any account debtor set forth in Schedule A, Seller shall promptly advise Purchaser and shall, subject to Purchaser's approval, adjust such disputes and advise Purchaser of adjustment, and Purchaser shall have the right at any time to charge back to Seller's account the amount of any allowance, return or Account, full payment of which is delayed or refused by an asserted counterclaim, defense or offset and any expenses incurred by Purchaser, together with interest from the date of purchase of the account in dispute.   Unless reassigned to Seller, Purchaser shall remain the absolute owner of such Account and any rejected, returned, or recovered personal property, with the right to take possession thereof at any time, but if such possession is not taken, Seller is to resell it for Purchaser's account with the proceeds made payable to Purchaser.

5.  **Security Interest.**   Seller hereby grants to Purchaser a present and continuing security interest in all presently owned or hereinafter acquired (a) accounts, (b) accounts receivable, (c) contract rights, (d) chattel paper, (e) equipment, (f) inventory, (g) general intangibles, (h) instruments, (i) personal property, and (j) all proceeds of any of the foregoing, including any insurance proceeds (the "Collateral"). The security interest and assignment includes Purchaser's right to any returned personal property.  As such owner, and in addition to Purchaser's rights under the Uniform Commercial Code, Purchaser shall have all rights of an unpaid seller, including the rights of replevin, claim and delivery, reclamation, and stoppage in transit, and any personal property so recovered will be considered, as between the parties hereto, as returned personal property. This assignment of security interest is granted to Purchaser to secure Seller's performance of the obligations, representation, warranties, covenants and agreements contained in this Agreement. This security interest is granted to Purchaser to secure all indebtedness owed by Seller at any time, including, but not limited to, future indebtedness, collection costs and attorney fees.  Upon a breach of any of the obligations representations, warranties, covenants and agreements contained in this Agreement, Purchaser may exercise, at its option, any and all rights with respect to the Collateral of a secured creditor under the provisions of Article 9 of the Uniform Commercial Code including the right to realize upon said collateral as Purchaser may determine. Seller agrees to sign such financing statement, in a form satisfactory to Purchaser, which Purchaser may at any time desire to file in order to protect Purchaser's security interest.

EXHIBIT __A__
PAGE _15_ OF _31_

Seller Initials _____                          3                          Purchaser Initials _____

6. **Payment.** Upon acceptance of this Agreement by Purchaser, Purchaser further agrees, upon collection in full of each account set forth in Schedule A, to promptly pay over to or at the direction of Seller the appropriate sums as provided in Schedule A, less any deductions, discounts, charge backs, costs, expenses or off-sets provided for in this Agreement, less any funds previously advanced by Purchaser, less any fees charged by Purchaser pursuant to the attached commitment letter which shall be made a part of the Agreement.

7. **Seller Liability.** The Seller further agrees that if any of the amounts referred to in Paragraph 3(b) above (or any portion thereof) is not paid by the account debtor for any reason within 90 days from the invoice date, the Seller shall be liable to repay to Purchaser any amount due on the invoice. Seller will indemnify and protect Purchaser against liability, loss or expense caused by or arising out of the rejection of goods or services by any account debtor or alleged counterclaims, defenses, or offsets of every kind.

8. **Further Pledge.** Seller agrees that it will not permit any security interest, lien or encumbrance to attach to any Collateral now or hereafter granted to Purchaser or upon an Account. Seller shall not assign any of its contracts or the right to receive payment from any source to any other entity without Purchaser's advanced written permission. Seller shall not change its name or address without informing Purchaser of such change in advance. Seller shall not instruct account debtors to pay funds to any entity other than Purchaser (including Seller) without Purchaser's advanced written permission. Any payments received by Seller from an account debtor shall be held in trust by Seller for the benefit of Purchaser, and Seller shall immediately transmit such funds to Purchaser. Seller shall remain current upon and pay all governmental taxes and fees, including, but not limited to, payroll and unemployment taxes, business operation taxes and property taxes and shall remain current on all employee retirement and benefit plans and payments as required by law. Purchaser is not obliged to ensure that Seller complies with these requirements, and no party may rely upon Purchaser to do so.

9. **Collection Costs.** The Seller agrees to pay all cost of Purchaser of collection of any sum or sums due hereunder, and, if collected by or through an attorney, twenty percent (20%) of the principal and interest of the sum or sums due as attorneys' fees together with all other legal and court expenses.

10. **Inspection Of Books And Records.** Seller shall allow Purchaser access to all of Seller's books and records which Purchaser desires to review within forty eight (48) hours of the request being made by Purchaser. Purchaser may make copies of such books and records.

11. **Construction.** Whenever possible, each provision of the Agreement shall be interpreted in such manner as to be effective and valid to the greatest extent allowed under applicable law, but if any provision of the Agreement shall be prohibited

EXHIBIT _A_
PAGE _16_ OF _31_

Seller Initials _____        4        Purchaser Initials _____

by or invalid under applicable law, said provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

12.    **Indemnity.** Seller hereby agrees to defend, protect, indemnify and hold harmless Purchaser and all of Purchaser's directors, officers, employees and agents from and against any and all (a) claims, demands and causes of action of any nature whatsoever brought by any third party and arising from or related or incident to this Agreement, (b) costs and expenses incident to the defense of such claims, demands and causes of action including, without limitation, reasonable attorneys' fees and court costs, and (c) liabilities, judgments, settlements, penalties and assessments arising from such claims, demands and causes of action, The indemnity contained in this paragraph 12 shall survive the termination of this Agreement.

13.    ADMINISTRATION OF AGREEMENT. SELLER HEREBY RECOGNIZES AND AGREES THAT PURCHASER SHALL ADMINISTER FROM ITS PRINCIPAL OFFICES LOCATED IN THE COMMONWEALTH OF VIRGINIA ALL MATTERS RELATING TO THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO: THE PREPARATION, DELIVERY, FINAL APPROVAL, ACCEPTANCE AND FINAL EXECUTION OF THIS AGREEMENT; RECEIPT, REVIEW, PURCHASE, AND FUNDING OF ACCOUNTS FROM SELLER; AND THE ACCOUNTING OF ALL COLLECTIONS AND PAYMENTS RECEIVED UNDER THIS AGREEMENT. SELLER FURTHER STIPULATES AND AGREES THAT SUCH ADMINISTRATION CONSTITUTES SUFFICIENT CONTACTS WITH THE COMMONWEALTH OF VIRGINIA TO SUPPORT THE FOLLOWING SECTIONS REGARDING CHOICE OF LAW AND CHOICE OF JURISDICTION AND VENUE.

14.    CHOICE OF LAW. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE COMMONWEALTH OF VIRGINIA, HOWEVER, WITHOUT REGARD TO THE CONFLICTS OF LAW RULES THEREOF.

15.    CHOICE OF JURISDICTION AND VENUE. WITHOUT PREJUDICE TO THE RIGHT OF PURCHASER TO BRING SUIT IN ANY COURT OF COMPETENT JURISDICTION TO ENFORCE THIS AGREEMENT OR ANY OTHER RIGHT PURCHASER MAY HAVE, THE SELLER HEREBY IRREVOCABLY WAIVES ANY PRESENT OR FUTURE OBJECTION TO THE JURISDICTION OF THE COURTS OF THE COMMONWEALTH OF VIRGINIA OR THE UNITED STATES DISTRICT COURTS LOCATED IN VIRGINIA OVER SELLER FOR THE PURPOSE OF ENFORCING THIS AGREEMENT OR ANY OTHER RIGHT PURCHASER MAY HAVE WITH RESPECT TO SELLER OR ANY DISPUTE BETWEEN THE PARTIES, AND SELLER SPECIFICALLY AGREES TO THE JURISDICITION AND VENUE OF THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA, VIRGINIA, AND THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION, FOR SUCH PURPOSE. IN THE EVENT AN ACTION IS

EXHIBIT _A_
PAGE _17_ OF _31_

Seller Initials _____                    5                    Purchaser Initials _____

INSTITUTED IN A COURT OTHER THAN THESE COURTS LOCATED IN VIRGINIA ADDRESSING DISPUTES BETWEEN THE PARTIES TO THIS AGREEMENT, SELLER AGREES TO THE REMOVAL OF SUCH ACTION TO THESE COURTS LOCATED IN VIRGINIA UPON THE REQUEST OF PURCHASER.

In Witness Whereof, Seller has executed this Agreement on the _21_ day of _Feb_, 20_01_, and the Purchaser has noted its acceptance by its authorized representative.

Seller:

BY _____  _KATHLEEN C ROBISON, PRESIDENT_
    Authorized Signature, Title

### Certificate of Notary Public

In the State of _California_,

County of _Monterey_, to wit;

This the _21st_ day of _February_, 20_01_, _Kathleen C. Robison_, who is known to me, or was proven to be by sufficient proof, appeared before me, the undersigned, a Notary Public of the aforesaid jurisdiction, and, after being sworn according to law, executed the above document before me and stated that (s)he was authorized to execute this document for the purposes contained therein.

In witness thereof, I hereunder set my hand.

_Michael J. Mendenhall_
Notary Public

My commission expires: _April 12, 2004_

SEAL

MICHAEL J. MENDENHALL
Comm. # 1258825
NOTARY PUBLIC-CALIFORNIA
Monterey County
My Comm. Expires April 12, 2004

Accepted:_____, 20___

**Capitol Resource Funding, Inc.**

BY _____
    Authorized Signature, Title

EXHIBIT _A_
PAGE _18_ OF _31_

Seller Initials _____

6

Purchaser Initials _____

510 King Street, Suite 501
Alexandria, Virginia   22314

EXHIBIT *A*
PAGE *19* OF *31*

Seller Initials _____

7

Purchaser Initials _____

## Management Assistance & Concepts Corporation

Certification of Corporation
Board of Directors' Resolutions
- - - -

"Resolved, that the officers of this Corporation, or any of them, be and they hereby are authorized and directed to execute, from time to time, on behalf of this Corporation, any agreement with regard to the assignment of accounts receivable with Capitol Resource Funding, Inc., a Virginia corporation having its principal place of business at 510 King Street, Suite 501, Alexandria, Virginia 22314 (hereinafter called "CRF"), relating to the sale, pledge, assignment, negotiation, and guaranty of all contract rights, accounts, accounts receivable, general intangibles, bills, notes, acceptances, and any other forms of obligations (hereinafter collectively called "Accounts") to or with CRF and from time to time to extend, renew, renegotiate, amend, supplement, or otherwise modify any such agreement or agreements, and they, or any of them, or any person or persons hereafter agreed upon or designated by any of them to act for this Corporation, are hereby further authorized and directed from time to time to sell, assign, transfer, deliver, endorse, negotiate, and grant any lien rights with regard to, and grant any security title to and security interest in, and guarantee to CRF or its assigns any and all Accounts now or hereafter belonging to or acquired by this Corporation, and for said purposes to execute and deliver any and all assignments, schedules, transfers, endorsements, contracts, agreements, guaranties, or other instruments in respect thereof, and to make remittances to CRF in kind in respect thereof by checks, drafts, or otherwise, and to do and perform all such other acts and things as may be required in connection with the accomplishment of the foregoing, including appointment of CRF, or any of its agents, as attorney-in-fact to do such acts as CRF in its discretion may choose to do, and further to include acts of approval, confirmation, and/or ratification.

"Be It Further Resolved, that the officers of this Corporation, or any of them, be and they hereby are authorized and directed to enter into a Purchase and Assignment Agreement with CRF which provides, among other things, that any dispute arising out of or relating to the Agreement will be governed by the laws of the Commonwealth of Virginia and any such dispute will be submitted only to the Circuit Court for the City of Alexandria, Virginia or the United States District Court for the Eastern District of Virginia, Alexandria Division, and that this Corporation stipulates and agrees that there are sufficient contacts with Virginia to support such elections.

"Be It Further Resolved, that the officers of this Corporation, or any of them, be and they hereby are authorized and directed to sell such Accounts to CRF, from time to time, on behalf of this Corporation, for such sums as they or any of them may deem necessary or desirable in connection with the operation of the business of this Corporation, upon such terms and conditions as may be obtainable through negotiation with CRF, and to execute promissory notes and such other agreements and notes in respect thereto in the name of this Corporation for the repayment of such amounts advanced, and further to extend, renew, renegotiate, refinance or otherwise modify such terms and conditions by agreement with CRF.

"Be It Further Resolved, that the officers of this Corporation, or any of them, be and they hereby are authorized and directed to request, from time to time, on behalf of this Corporation, as they deem necessary or desirable for the operation of the business of this Corporation, that CRF make purchases of Accounts from this Corporation, such purchases to become subject to the terms and conditions of any agreement with regard to the assignment of Accounts, existing at the time of such request or any modification, extension, renewal, or renegotiation thereof.

Page 1

EXHIBIT  A
PAGE  20  OF  21